THE STATE EX INF. JOHN T. BURGESS, Prosecuting Attorney of Barry County, EX REL. W. E. HANKINS, Appellant, v. J. T. HODGE.—8 S. W. (2d) 881.

Court en Banc, July 30, 1928.

*J. E. Sater, D. H. Kemp* and *Gene Frost* for appellant.

*J. S. Davis* and *H. A. Gardner* for respondent.

ATWOOD, P. J.—This is a proceeding in the nature of quo warranto questioning the right of respondent, J. T. Hodge, to hold the office of County Superintendent of Public Schools for Barry County. Relator has appealed from a judgment adverse to him rendered in the Circuit Court of Barry County.

It appears from the record that on April 3, 1923, relator was duly elected County Superintendent of Public Schools for Barry County to serve as such until the first Monday in July, 1927, or until his successor was elected and qualified; that he thereupon duly qualified and entered upon and continued to discharge the duties of that office; that on April 5, 1927, at the annual school election held in Barry County, Missouri, relator and respondent were candidates for the office of County Superintendent of Public Schools; that respondent was duly elected thereto, and on April 9, 1927, received a commission pursuant to said election, took the oath of office and

filed his bond which was duly approved by the county court; that prior to July 4, 1927, and pursuant to request of the secretary of the State Board of Education, respondent received sealed bids for text-books and made recommendations and submitted names to the county court for the County Text Book Commission; that on July 4, 1927, respondent demanded of relator that he turned over to him all books, papers, certificate stub-books and records in his possession as such County Superintendent of Public Schools; that relator refused to comply with this demand, and thereafter caused this proceeding to be instituted.

The user shown is sufficient to authorize a proceeding in quo warranto. [State ex rel. v. Meek, 129 Mo. l. c. 436.] The qualifications of relator are not questioned, but the right of respondent to hold the office is challenged on two grounds, first, that on the date of his election he did not have a certificate entitling him to teach in the public schools of Barry County as required by law, and second, that he did not file a statement of his campaign expenses within the time provided by law.

Relative to the first proposition, Section 11343, Revised Statutes 1919, as amended (Laws 1923, p. 359), among other qualifications of a County Superintendent of Public Schools, provides that he "shall at the time of his election hold a diploma from one of the state normal schools or state colleges, or state university, or shall hold a state certificate, authorizing him to teach in the public schools of Missouri, or shall hold a first-grade county certificate authorizing him to teach in the county of which he is superintendent."

The uncontradicted evidence as to respondent's qualifications was that a first-grade certificate was issued to him by relator who was then County Superintendent of Public Schools for Barry County, Missouri, on June 5, 1915, which authorized respondent to teach in the public schools of any county in the State of Missouri for a term of three years from that date; that respondent taught under that certificate and on June 2, 1918, it was renewed; that respondent continued to teach under the renewed certificate, and on March 14, 1921, the original certificate was again renewed; that respondent continued to teach under the renewed certificate, and on March 8, 1924, the original certificate was renewed for the third time. Relator was Superintendent of Public Schools for Barry County each time the original first-grade certificate was renewed, and the papers evidencing these various acts bear his signature as such School Superintendent. After the third renewal of his first-grade certificate respondent continued to teach thereunder, and some time in April, 1927, after his election, respondent applied to relator. who was then County Superintendent of

Public Schools for Barry County for a term continuing until the first Monday in July, 1927, or until his successor was elected and qualified, for a fourth renewal of his certificate. Relator thereupon told respondent that he could not renew his certificate at that time as the time of the examination had passed, such being the first Friday and Saturday in March, and that he would have to wait until June. Respondent again presented his certificate to relator on the date of the examination, June 4, 1927, and requested that relator renew it. Relator again refused to renew the certificate, this time on the ground that respondent's certificate expired in March, 1927. The uncontradicted evidence further showed that at the time ·of respondent's election he had college hours and college credits which entitled him, on presentation of the same to the State Superintendent of Public Schools, to a teacher's state certificate, and that the same were so presented and such a certificate was duly issued to respondent by the State Superintendent of Public Schools on April 22, 1927.

Section 1, Article XI, of the Constitution of Missouri, lodges the power to establish and maintain free public schools in the General Assembly. Pursuant thereto the General Assembly in 1911 created the office of County Superintendent of Public Schools in each county in the State. [Laws 1911, p. 404; Sec. 11343, R. S. 1919; Laws 1923, p. 359.] Such an officer has no common-law powers, and warrant for all his official acts must appear in statutory enactments. He has authority "to examine teachers and grant certificates of qualification to teach in their respective counties or in the State." [Sec. 11358, R. S. 1919.] A first-grade certificate, such as that issued to respondent June 5, 1915, is valid for three years in the State. [Sec. 11358, supra.] It is the duty of the County Superintendent of Public Schools to renew a first-grade certificate "an unlimited number of times: *Provided*, that the holder shall give satisfactory evidence to county superintendent of public schools that certain professional work prescribed by state superintendent at the time of issuing of or former renewal of the certificate has been complied with: *Provided*, that any teacher who had had five years' experience in teaching and was employed as a teacher January 1, 1912, and holds a first-grade certificate shall have his or her county certificate renewed an unlimited number of times, on condition that said teacher is faithful in the performance of his or her professional duties." [Sec. 11361, R. S. 1919.] The particular form of a first-grade certificate, or a renewal of the same, is not prescribed by statute, but the County Superintendent is required to keep "a record of all certificates granted, renewed, indorsed or revoked, said record exhibiting the number granted, date, grade and length of time for which each certificate was issued, and the name, age, sex and nativity of the per-

son receiving the same, and deliver the same to his successor in office." [Sec. 11362, R. S. 1919.] Thus, every certificate "granted" is individuated in the respects named by an official record which the law requires the County Superintendent to keep. Presumably such a record was kept in the instant case, and the first-grade certificate issued to respondent June 5, 1915, and introduced in evidence, purports to be and under the statute was valid for a period of three years from its date. This certificate was evidence of a valuable right vested in respondent, not only to teach school in any county in the State for a full period of three years, but to have that right renewed or extended "an unlimited number of times" on the sole condition (for the proof was that respondent "had had five years' experience in teaching and was employed as a teacher January 1, 1912," and held a first-grade certificate), that he be faithful in the performance of his professional duties. [Sec. 11361, supra.] Certainly the County Superintendent of Public Schools was without power to shorten the three-year period evidenced by the certificate except by revoking the same for cause (Sec. 11364, R. S. 1919), and it is nowhere contended that he did this. This certificate bore on its face all the data pertaining to the same of which by law the County Superintendent was required to keep a record, and an important part of the record was the length of time for which this certificate was issued. The statutes do not authorize any renewal or extension of a certificate by piecemeal. It must be either renewed in its entirety or not at all. If the time for which the original certificate was granted could not be shortened by a renewal or extension of that certificate, neither could the certificate be renewed or extended for a less time than three years, and consequently the time of the first renewal began to run at the end of the three-year term of the certificate and continued to run for a period of three years from that date. The second and third renewals each commencing in the same manner and being for a like period of three years, it follows that on April 5, 1927, the date respondent was elected, the full period of the third renewal granted him had not expired, and at the time he was elected he had a certificate entitling him to teach in the public schools of Barry County. It is of no consequence that in connection with each renewal of this certificate the County Superintendent of Public Schools issued a paper entitled "Teacher's Reissued Certificate," dated before the end of the three-year period then in force, and reciting that authority was given respondent to teach for a term of three years from the date thereof. No form of certificate or of renewal was prescribed by statute, and such recitals the effect of which was to alter the term specified in the original certificate were unauthorized by law. The original certificate was for a term of three years and as often as the certificate was renewed

it carried with it the full three-year term therein specified. When these renewals were granted relator must have had some such idea in mind for on each of these so-called "reissued certificates" appears the following indorsement: "Date of Original, June 5, 1915." Relator's present contention is plainly an afterthought on his part, because when respondent applied for a fourth renewal in April, 1927, more than three years after the day his third renewal was granted, relator made no claim that respondent's certificate had expired, but assigned an entirely different reason, which was also arbitrary and without warrant of law, for not granting a renewal.

The construction we have thus placed on the word "renewed" is not only justified by the language, reason and sense of the statutes above referred to, but it is in line with our views expressed in Insurance Co. v. National Bank of Missouri, 71 Mo. 58, l. c. 60, and American Press v. City of St. Louis, 284 S. W. (Mo. Sup.) 482, l. c. 486. There is no analogy between the renewal of a certificate under the above cited statutes and the revival of a judgment under other and different statutes and the common law applicable thereto. On the view we have taken it becomes unnecessary to discuss respondent's further contention that when respondent was elected he already had college hours and college credits that entitled him to receive a state certificate, and that under the liberal interpretation which should be given the statute he was then entitled to teach school in Barry County. The assignments of error in the admission of evidence are not presented in relator's brief, and we treat them as abandoned.

In his brief relator makes scant reference to, and apparently relies little upon, his second proposition that respondent failed to file statement of his campaign receipts and expenditures within the time provided by law. Our attention is directed only to that part of Section 5031, Revised Statutes 1919, which provides that within thirty days after election such statement shall be filed with the officer empowered by law to issue the certificate of election and a duplicate with the Recorder of Deeds; to Section 5032, which provides for the assessment of a fine in event of failure so to do; and to Section 5033, which provides that no person shall enter upon the duties of any elective office until he shall have filed such statement and duplicate. It must be noted that none of these provisions state that such person shall forfeit title to his office by reason of failure to comply with this statute. This provision is a part of what is generally known as the "Corrupt Practice Act." It is strictly penal in its nature and should be strictly construed. Nothing should be regarded as included in it which is not clearly described in its very words. [State ex inf. v. Bland, 144 Mo. l. c. 555.] Even if we regard that portion of the statute which provides

that no officer authorized by law to issue certificates of election shall issue the same until such statement shall have been so made, verified and filed, to which relator has not directed our attention, we must remember that this is a proceeding to try title to an office, and respondent derives title to his office by his election and not by his certificate of election. [State ex rel. v. Steers, 44 Mo. 1. c. 227; 9 R. C. L. p. 1114; 22 R. C. L. p. 444.] The record discloses that on June 29, 1927, respondent did file, and within two days thereafter verified, the statement required by law. This proceeding was commenced by information filed on July 5, 1927. The question thereby raised was respondent's right to hold the office on that date.

The validity of respondent's election not having been questioned, and it appearing that he possessed the qualifications required by statute at the time of his election and continued to possess the same, we conclude that the judgment of the trial court should stand, and it is hereby affirmed. All concur.